IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KELLI MERRICK, CARMEN SENDEJAS, KEITH LOTT, ERRICK STRINGFELLOW, JESSICA MANGIACARINA, TRACY SYLVESTER, Mayor DAVID GONZALEZ, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| LORI J. WILCOX, Bloom Township Democratic Committeeperson, BLOOM TOWNSHIP DEMOCRATIC ORGANIZATION, KELLEY D. NICHOLS, LARECIA BYRD TUCKER, FRANCISCO PEREZ, LEONARD MORGAN, RICARDO LEON JR., ROBERT BENAVIDES, LESHAWN RIDLEY, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF PURSUANT TO 42 U.S.C. § 1983**

NOW COME the Plaintiffs, KELLI MERRICK, CARMEN SENDEJAS, KEITH LOTT, ERRICK STRINGFELLOW, JESSICA MANGIACARINA, TRACY SYLVESTER, Mayor DAVID GONZALEZ, by and through their attorneys Cynthia S. Grandfield and Tiffany Nelson-Jaworski of Del Galdo Law Group, LLC and in support of their Complaint allege:

**Introduction**

1. This case involves the conduct of a virtual caucus by the Bloom Township Democratic Organization to nominate candidates on behalf of the party for the April 6, 2021 election. Because of the way the caucus was conducted,

1

Plaintiffs' constitutional rights under the First and Fourteenth Amendment were violated. As such, they bring this action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983.

## Jurisdiction

2. Subject matter jurisdiction is established pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 1983.

3. This Court has personal jurisdiction over the parties and venue is proper as all parties reside in and all substantive events complained of occurred or will imminently occur in Cook County, Illinois.

## Parties

4. KELLI MERRICK, CARMEN SENDEJAS, KEITH LOTT, ERRICK STRINGFELLOW, JESSICA MANGIACARINA, and TRACY SYLVESTER were all attendees and were proposed as candidates for nomination at the Bloom Township Democratic Organization's December 1, 2020 caucus. Specifically, KELLI MERRICK was a proposed candidate for Township Supervisor, CARMEN SENDEJAS for Clerk, KEITH LOTT, ERRICK STRINGFELLOW, JESSICA MANGIACARINA, and TRACY SYLVESTER for Trustees.

5. Mayor DAVID GONZALEZ is the Mayor of the City of Chicago Heights, Illinois, and was an attendee and otherwise qualified participant at the December 1, 2020 Bloom Township Democratic Organization caucus.

6. LORI J. WILCOX, was and is the Bloom Township Democratic Organization's duly elected Committeeperson in accordance with section 7-8(b) of the Illinois Election Code (10 ILCS 5/7-8(b)).

7. The BLOOM TOWNSHIP DEMOCRATIC ORGANIZATION, at all times relevant, is a township central committee as defined by Section 45-15 of the Township Code (60 ILCS 1/45-15) that facilitates the process of choosing the Democratic Party's nominees for township office. The Democratic Party is an "established political party" in Bloom Township, Illinois, as defined under section 10-2 of the Illinois Election Code (10 ILCS 5/10-2).[1]

8. In addition to herself, WILCOX submitted Defendants KELLEY D. NICHOLS, LARECIA BYRD TUCKER, FRANCISCO PEREZ, LEONARD MORGAN, RICARDO LEON JR., ROBERT BENAVIDES, and LESHAWN RIDLEY as nominees for various Bloom Township elected positions. They are named here as necessary party Defendants to be joined if feasible so as to achieve complete relief and to protect any interest they might have within the meaning of Fed. R. Civ. P. 19.

9. All parties were located or reside in Bloom Township and the County of Cook, Illinois.

---

[1] The Democratic Party is the dominant political party in Bloom Township. The Republican Party does not typically caucus and frequently does not submit candidates for township office.

## Facts

10. Pursuant to section 2A-1.1 of the Illinois Election Code, the next general election, known as the "consolidated election," will be held on April 6, 2021. (10 ILCS 5/2A-1.1).

11. Candidates for several elected offices within the Township will be voted upon and selected during the upcoming April 6, 2021 consolidated election. (10 ILCS 5/2A-33).

12. Pursuant to section 45-10 of the Township Code, primary nomination contests for the Township's elected offices were determined via a primary caucus held on December 1, 2020. (60 ILCS 1/45-10(a)).

13. Pursuant to section 45-15 of the Township Code, partisan township central committees have the legal authority to promulgate the rules of procedure for the Township's primary caucus. (60 ILCS 1/45-15).

14. Pursuant to section 45-50 of the Township Code, the rules of procedure set forth by each township central committees must be approved and may be amended by a majority vote of the qualified participants attending their established political party's respective primary caucus. (60 ICLS 1/45-50).

15. Prior to the holding of a caucus on December 1, 2020, a group of over seventy elected officials and concerned citizens, including seven mayors, current Township Trustees, and the current Supervisor, filed as plaintiffs in the Circuit Court of Cook County alleging that, were the caucus to be held in-person, the public's health, safety, and welfare would be endangered as the

caucuses have been heavily attended and seen up to 300 attendees. The plaintiffs instead requested that the candidates be determined by a primary election in February of 2021, as permitted under the Township Code, or that any interested candidates simply participate as independent party candidates in the April 6, 2021 consolidated election. They also filed an emergency motion for a TRO and a preliminary injunction.

16. The Circuit Court of Cook County denied the motion on October 27, 2020.

17. The plaintiffs filed an expedited interlocutory appeal before the First District of the Illinois Appellate Court. On November 10, 2020, the Appellate Court affirmed the denial of the motion but issued instructions requiring that, should a caucus proceed, WILCOX and the BLOOM TOWNSHIP DEMOCRATIC ORGANIZATION would be required to follow all health and safety guidelines, and, should they hold the caucus virtually, that they provide computer and internet access to any and all individuals who needed either in order to participate in the caucus.

18. On November 13, 2020, the Illinois Appellate Court issued its mandate.

19. On November 19, 2020, LORI J. WILCOX indicated her intention to hold the caucus at least somewhat in person, stating in a Chicago Tribune article that she thought it could be safe if "only 25 people attended" and they "engaged in social distancing." It is clear that Wilcox planned to have her supporters attend the caucus in-person while relegating all other qualified participants with no choice but to attend the caucus virtually.

20. On November 20, 2020, the Circuit Court of Cook County entered an order requiring WILCOX and BLOOM TOWNSHIP DEMOCRATIC ORGANIZATION to comply with the Appellate Court's mandate.

21. On December 1, 2020, WILCOX and the BLOOM TOWNSHIP DEMOCRATIC ORGANIZATION held a mostly virtual caucus.

22. The caucus began by having all participants obtain a Zoom login and password to attend the caucus virtually. To obtain this information, participants were required to drive to a Chicago Heights Golf Course at 6:00 p.m. and sign an affidavit, in compliance with the Illinois Election Code, affirming that they were qualified to participate in the caucus.

23. The participants were instructed to log in to the virtual caucus at 7:30 p.m.

24. Prior to the caucus, participants that needed computer or internet access in order to participate were instructed to call a specified telephone number. Several individuals, however, called that number but received no response.

25. One participant who requested a computer and/or internet access at the caucus was instead given a smartphone and was then instructed to sit in her personal vehicle in the parking lot.

26. When the caucus began at 7:30 p.m., WILCOX attempted to present the proposed rules of the caucus for a vote.

27. WILCOX and other unknown persons attempted to present the proposed caucus rules via sharing a JPEG in the "chat" section of the Zoom call. The

rules appeared to be three pages in length and each page appeared to be a separately uploaded JPEG photo.

28. Many users were unable to open or otherwise view these JPEG photos. After several users conveyed both verbally and via the chat that they were unable to view the proposed rules, WILCOX and BLOOM TOWNSHIP DEMOCRATIC ORGANIZATION shared their screen and put up the proposed rules one page at a time.

29. Still, many of the attendees stated that they had difficulty viewing the proposed rules. Nonetheless, a motion to approve the proposed rules was made.

30. The rules contained several typos and other errors.

31. Page 2 of the proposed rules stated that candidates for nomination for Bloom Township offices could only be submitted as part of a "full slate" of candidates for every Township office up for election in April of 2021.

32. In addition, the proposed rules, which were first presented at 7:30 p.m., stated that all proposed candidates must be identified *in writing* by 6:15 p.m. by filling out some elusive "paperwork" that was never provided.

33. Further still, the proposed rules than confusingly stated that "The Caucus Secretary will read off the slate of candidates already officially nominated."

34. A motion was made to adopt the proposed rules.

35. Plaintiff, Mayor DAVID GONZALEZ, made a motion to amend the proposed rules, specifically with respect to the requirement of a "full slate."

36. The caucus Chair, however, refused to vote on that motion prior to voting on the motion to adopt the proposed rules, despite Mayor Gonzalez several times making a "point of order."
37. Instead, a vote was made on the motion to adopt the proposed rules. The motion carried and the proposed rules were adopted.
38. A vote was then held on Mayor Gonzalez's motion to amend. The method of voting was via survey on Zoom. At the time of voting, the number of people online was believed to be approximately 90 people based on a statement made at the start of the caucus by one of the individuals running the caucus. The survey identified percentages of 47% in favor and 53% opposed to the motion to amend. At no time was there any indication as to how many votes were cast in favor or against. With that number of attendees, the difference in votes would only be by a few votes.
39. On information and belief, there appeared to be people on the Zoom login that were only identified by a phone number. There also seemed to be some individuals, such as Defendant WILCOX's daughter, that were on the list of attendees twice.
40. After the motion to amend failed, WILCOX's supporters collectively nominated candidates. It was never one person who nominated the whole team. The Secretary never asked them if they were nominating an entire

slate.[2] During the time that her nominations were made, it became clear that several, if not the majority, of her nominees were physically present with her as opposed to participating virtually like the rest of the attendees were instructed to do and like the attendee that was told to sit in her car to participate and not come inside the facility.

41. Further, some of WILCOX's nominees and supporters appeared to still be at their office, seeming to indicate that they did not have to obtain the Zoom information or sign the affidavit of being a qualified elector on the day of the caucus in compliance with the Illinois Election Code and instead were provided the Zoom information earlier and signed the affidavit prior to the caucus.

42. Additionally, for many of the nominees, it was either not said what position they were being nominated for or many of the attendees could not hear which positions these candidates were being nominated for due to the connection. The individuals nominated were: LORI J. WILCOX, KELLEY D. NICHOLS, LARECIA BYRD TUCKER, FRANCISCO PEREZ, LEONARD MORGAN, RICARDO LEON JR., ROBERT BENAVIDES, and LESHAWN RIDLEY.

43. After these nominations, Mayor GONZALEZ attempted to nominate KELLI MERRICK, CARMEN SENDEJAS, KEITH LOTT, ERRICK

---

[2] It is unclear if these nominations were made in writing as well as indicated in the adopted caucus rules.

STRINGFELLOW, JESSICA MANGIACARINA, and TRACY SYLVESTER for various Township offices as described above.

44. However, Mayor GONZALEZ's candidates were rejected by the caucus officers because he did not present a "full slate" of candidates.

45. Instead, a vote was taken only on the candidates nominated by WILCOX's supporters. The vote was also taken via survey on Zoom and was submitted as a "yes" or "no" question for all the candidates at once.

46. The candidates were also proposed in the survey as a list of names with no indication as to what position they were being nominated for and listed the date of the election as "April 26, 2021" as opposed to the actual date of "April 6, 2021."

47. That vote was 82% to 18%, but in that instance the vote total was announced during the Zoom session as 63 to 14. It is not clear what happened between then and 10 minutes earlier when there appeared to be 10 to 15 more people participating.

48. It is also uncertain as to how many people were participating on a landline or cellphone that was not a smart phone and how they would have been able to vote on these surveys.

49. On December 21, 2020, the Committee person LORI J. WILCOX, submitted the Defendants to the Bloom Township Clerk for submission to the Cook County Clerk to be placed on the ballot as the candidates of the BLOOM

TOWNSHIP DEMOCRATIC ORGANIZATION in the April 6, 2021 consolidated election. (60 ILCS 1/45-20).

50. While the Illinois Election Code permits the filing of objections before a local electoral board and the decisions of that electoral board can be appealed via administrative review to the Circuit Court of Cook County, the Committee Chair, LORI J. WILCOX, can simply fill a vacancy created by the removal from the ballot through her own appointment powers.

51. Further, there are no prohibitions on the Committee chair just resubmitting the same candidates for placement on the ballot.

52. Moreover, the electoral board process was created to address the qualifications and ability of those nominated to hold office, not to address constitutional flaws in the caucus that nominated them allegedly resulting in the deprivation of certain rights.

### COUNT I – VIOLATION OF FIRST AMENDMENT RIGHTS TO ASSEMBLE AND FREEDOM OF ASSOCIATION AND FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION AND DUE PROCESS UNDER 42 U.S.C. § 1983

53. Plaintiffs repeat and reallege paragraphs 1-52 as if fully stated herein.

54. LORI WILCOX, as an official of an "established political party" administering a primary election for the purpose of nominating candidates for election to *public* office under the Illinois Election Code, was acting under the color of state law within the meaning of 42 U.S.C. § 1983. Further, BLOOM TOWNSHIP DEMOCRATIC ORGANIZATION, through its

representative and committee person LORI WILCOX, was also acting under the color of state law.

55. The acts described above state a claim under 42 U.S.C. § 1983 in that they violated and/or impaired the Plaintiffs rights under the First and Fourteenth Amendment of the U.S. Constitution to associate politically, to assemble, to cast their votes effectively, to have access to the ballot, to run for office, and to equal protection and due process of law.

56. Specifically, participants were treated differently and allowed to participate at different levels during the caucus for no apparent reason, much less a rational basis.

57. There is no basis for the arbitrary requirement of a "full slate" of candidates to put forth a nomination, a requirement that was not identified until the day of the caucus itself. Further, because the "full slate" requirement was not identified until the day of the caucus, Plaintiffs had no opportunity to challenge the constitutionality of the "full slate" requirement *prior* to the election. *See, e.g., Libertarian Party of Illinois v. Scholz*, 872 F. 3d 518 (7th Cir. 2017).

58. Further, the "full slate" requirement provided cover for the virtual caucus' lack of security as well as the lack of clarity as to who was actually participating in the caucus, how or if these participants were voting during the caucus, and whether each participant was in fact casting only one vote.

59. In addition, the imposition of the "full slate" requirement caused the wholesale rejection of Plaintiffs as candidates for nomination, thereby preventing qualified voters from voting for them, and therefore resulted in a violationof Plaintiffs and voters' core First Amendment rights to cast their votes, to assemble in pursuit of shared political goals, and to have equal access to the ballot.

60. The use of the "full slate" requirement also had the effect of barring Plaintiffs from accessing the ballot as candidates while allowing similarly situated candidates to run for the Democratic Party's nominations unopposed.

61. As a result, the irrational unequal treatment of similarly situated parties caused by the use of the "full slate" requirement is a violation of the Plaintiffs and voters Fourteenth Amendment rights to due process and equal protection under the law.

62. Defendants do not have a sufficiently compelling interest for employing the "full slate" requirement and thereby burdening the Plaintiffs First and Fourteenth Amendment rights in this manner, and, even if they did have such an interest, the "full slate" requirement is not narrowly tailored to advance that interest.

63. Given the limited number of qualified voters participating in this caucus, the imposition of the unconstitutional "full slate" requirement, causing the wholesale rejection of Plaintiffs as potential nominees and therefore

preventing participants from voting for them, undoubtedly had a *significant impact* on the caucus' outcome.

64. In addition, as a result of all of the above-described irregularities and constitutional improprieties, the caucus was administered and occurred in a manner that, at its core, was patently and fundamentally unfair.

65. Because the consolidated election is still over 4 months away, and because Plaintiffs do not request that the Court order a new caucus election, but instead seek only to have the Court enjoin Defendants from reaping the benefit of running for township office as the Democratic Party's official nominees as a result of an unconstitutionally conducted caucus, the balance of interests weighs significantly in favor of the Plaintiffs and voters whose First and Fourteenth Amendment rights were heavily infringed upon in this case.

66. Plaintiffs have asserted an actual controversy between the parties in this case for which the Plaintiffs' respectfully request that this Court enter a declaratory judgment concerning the rights of each party to this case.

67. The Plaintiffs have a clear and ascertainable right in need of protection, in that the Plaintiffs' First and Fourteenth Amendment rights under the U.S. Constitution to cast their votes effectively, run for office, and vote for the candidate of their choice. These fundamental and core constitutional rights cannot be unnecessarily burdened by the State or officials acting under the color of state law, as such rights relate to their participation in the

nomination and selection of candidates for public or political party office in the Township.

68. Plaintiffs will be irreparably harmed if injunctive relief is not granted because their constitutional rights, as described herein, will have been violated.

69. Plaintiffs have no adequate remedy at law except as to seek declaratory and injunctive relief.

70. Plaintiffs have raised a fair question that their constitutional rights have been violated.

71. Further, as held by the Seventh Circuit, injunctive relief to protect the First Amendment is almost always in the public interest.

   WHEREFORE, Plaintiffs respectfully request the following relief:

(a) That the Court enter a declaratory judgment that a requirement of a full slate of candidates for nomination is unconstitutional and a violation of the First and Fourteenth Amendments of the U.S. Constitution.

(b) That the Court enter a declaratory judgment that the method in which the caucus was conducted violated the First and Fourteenth Amendments.

(c) That the Court enjoin the Defendants from being placed on the ballot as designated members of the Democratic party.

(d) That the Court permit the Plaintiff and Defendant candidates to be placed on the ballot as independent candidates despite not submitting

nomination petitions in accordance with Article 10 of the Illinois Election Code (10 ILCS 5/10-1, et seq.).

(e) That any need for security for purposes of injunctive relief be waived under Fed. R. Civ. P. 65(c) as Plaintiffs are seeking to protect constitutional rights in the public interest and said security is routinely waived under such circumstances.

(f) For such other and further equitable relief that the Court deems just.

(g) That the Plaintiffs be awarded their attorney fees and costs in bringing this suit pursuant to 42 U.S.C. § 1988.

Respectfully submitted,
Plaintiffs

By: */s/ Cynthia S. Grandfield*
Cynthia S. Grandfield

Cynthia S. Grandfield│grandfield@dlglawgroup.com (ARDC No. 6277559)
Tiffany Nelson-Jaworski | jaworski@dlglawgroup.com
Michael A. Albert│albert@dlglawgroup.com
DEL GALDO LAW GROUP, LLC
1441 S. Harlem Avenue
Berwyn, Illinois 60402
(708) 222-7000/(312) 222-7000 (t)